UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATERA, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>CAREDX, INC.,<br><br>        Defendant. | Case No.  23-mc-80117-LJC<br><br>**ORDER GRANTING NON-PARTY EUROFINS VIRACOR, LLC'S MOTION TO QUASH SUBPOENA**<br><br>Re: ECF No. 1 |

Pending before the Court is non-party Eurofins Viracor, LLC's (Eurofins) Motion to Quash Subpoena (Motion to Quash, or Mot.), filed on April 14, 2023. ECF No. 1. Natera filed an Opposition to Eurofins' Motion to Quash (Opp.) on April 28, 2023. ECF No. 7. Eurofins filed its Reply in Support of the Motion to Quash (Reply) on May 5, 2023. ECF No. 12. Also pending before the Court is Natera's Administrative Motion to Consider Whether Another Party's Material Should Be Sealed (Administrative Motion to Seal) filed simultaneously with its Opposition to Eurofins' Motion to Quash. ECF No. 6.

After carefully considering the parties' written submissions, and having had the benefit of oral argument on May 23, 2023, the Court hereby **GRANTS** Eurofins' Motion to Quash, and gives Defendant CareDx, Inc. (CareDx) additional time to file a statement/declaration as required by Civil Local Rule 79-5(f)(3) in support of Natera's Administrative Motion to Seal.

**I.    BACKGROUND**

The disputed *Subpoena Duces Tecum and Ad Testificandum* (Subpoena) in this miscellaneous matter was issued on April 3, 2023.[1] Natera issued the Subpoena to Eurofins in

---

[1] According to Eurofins, "Natera originally served a subpoena on a different Eurofins entity on April 3, 2023. Wang Decl. ¶ 2. Although the Subpoena at issue was not served until April 11,

connection with a patent infringement lawsuit pending in the United States District Court for the District of Delaware, Natera, Inc. v. CareDx, Inc., No. 20-038-CFC-CJB (D. Del. Jan 13, 2020). See Declaration of Jing Wang in Support of Eurofins' Motion to Quash (Wang Decl.), Ex. 2, ECF No. 1-2.

Eurofins, Natera, and CareDx are all in the business of manufacturing and selling proprietary diagnostic tests to clinics and hospitals around the country. Mot. at 2. At issue in the patent infringement case is Natera and CareDx's donor-derived cell-free DNA (dd-cfDNA)-based diagnostic testing used to determine whether an organ transplant recipient is rejecting the transplanted organ. Opp. at 1. In the Delaware case, Natera asserts three patents related to its dd-cfDNA test, Prospera. Id. CareDx's rival product is AlloSure. Id. Eurofins' test is called TRAC. Mot. at 1.

Natera brought the patent infringement lawsuit against CareDx on January 13, 2020. Mot. at 2. Fact discovery in the case began in January 2022 and closed on April 14, 2023. Id. When Natera issued the Subpoena on April 3, 2023, it initially demanded compliance a week later, on April 10, 2023. Id. Natera eventually agreed to an extension until April 14, 2023—the discovery cutoff date in the Delaware case. Id.

The Subpoena has three requests for production (RFPs), with matching deposition topics:

1. Documents sufficient to show the first date that You made each cfDNA Assay Product commercially available.

2. Documents sufficient to show, at a customer-by-customer, product-by-product level, monthly unit sales and revenues for each cfDNA Assay Product, from first sale through present.

3. All documents relating to Your market share within the United States for noninvasive assay tests used to measure the percentage of dd-cfDNA in posttransplant recipients.

Wang Decl., Ex. 2. The parties met and conferred regarding the Subpoena on April 11, 2023, and Natera offered to limit its scope by: 1) Dropping RFP No. 3 entirely; and 2) Revising RFP No. 2 so that it only seeks "unit sales," thus eliminating the request for Eurofins to identify its customers

---

2023, Eurofins and Natera agreed to treat the Subpoena as if it had been served on the same date as the initial subpoena—April 3, 2023." Mot. at 2, n.2.

or reveal its revenues. Opp. at 4-5; Declaration of Jeff Nardinelli in Support of Natera's Opposition (Nardinelli Decl.), Ex. 3, ECF No. 7-1. Natera also informed Eurofins that it would be willing to forego a deposition if Eurofins would provide a stipulation or declaration of authenticity as to the documents it produced. Nardinelli Decl., Ex. 3.

## II.     LEGAL STANDARD

Discovery from non-parties is governed by Federal Rule of Civil Procedure 45. "The scope of allowable discovery under Rule 45 is the same as the scope of discovery permitted under Rule 26(b)." In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp. Dated July 23, 2020, 337 F.R.D. 639, 645 (N.D. Cal. 2020). Rule 26 permits "[d]iscovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." Fed. R. Civ. P. 26(b)(1). Rule 45 requires that the party "responsible for issuing and serving a subpoena…take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). And "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

If a Rule 45 subpoena requests "commercial information," a court may quash or modify the subpoena. Fed. R. Civ. P. 45(d)(3)(B)(i). In the alternative, the court may order production of the commercial information under specified conditions if the requesting party "(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(d)(3)(C).

"The moving party bears the burden of persuasion on a motion to quash, but the party issuing the subpoena must demonstrate that the discovery is relevant." Strike 3 Holdings, LLC v. Doe, No. 4:18-CV-04993-KAW, 2019 WL 468816, at *2 (N.D. Cal. Feb. 6, 2019). "[I]n deciding whether to quash or modify a subpoena to a third party, a court must balance the relevance of the

discovery sought and the burden to the party seeking the subpoena against the potential hardship to the [subpoenaed party], keeping in mind Rule 26's broad policy favoring full discovery." Apple, Inc. v. Samsung Elecs. Co., No. SACV122176AGJPRX, 2013 WL 12324184, at *1 (C.D. Cal. Jan. 3, 2013).

### III.   DISCUSSION

#### A.   Motion to Quash

Eurofins argues that the Court should quash the Subpoena because it: "1) fails to provide Eurofins a reasonable time to comply; (2) requires Eurofins to produce documents and testify at a location more than 100 miles from where Eurofins resides; (3) requires disclosure of Eurofins' highly confidential information to direct competitors without adequate protections; and (4) subjects Eurofins to undue burden." Mot. at 4. For its part, Natera argues that the requested information is highly relevant, it has a substantial need for the information, and Eurofins' specific concerns are adequately addressed by Natera's offer to significantly narrow the scope of the Subpoena as well as the parties' protective order in the Delaware action. Opp. at 5-8. Alternatively, Natera claims that the facts in this case warrant transfer to the transfer to the District of Delaware under Rule 45(f). Id. at 13.

#### 1.   Transfer of Motion to Quash to District of Delaware

Rule 45 provides that "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). The Rule does not go on to define what circumstances qualify as "exceptional." However, the Advisory Committee notes to Rule 45 provide that "[i]n some circumstances…transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." Fed. R. Civ. P. 45(f) Advisory Committee Notes (2013); see also In re UBS Fin. Servs., Inc. of Puerto Rico Sec. Litig., 113 F. Supp. 3d 286, 288 (D.D.C. 2015) ("Among other elements,

4

1  courts determining whether 'exceptional circumstances' exist to warrant transfer have considered
2  '[case] complexity, procedural posture, duration of pendency, and the nature of the issues pending
3  before, or already resolved by, the issuing court in the underlying litigation.'") (internal citation
4  omitted).

5      Here, Eurofins does not consent to a transfer. Reply at 8. However, Natera argues that this
6  case meets the "exceptional circumstances" standard because transfer will promote judicial
7  economy, since Magistrate Judge Christopher J. Burke, who presides over discovery disputes in
8  the Delaware case, is "well equipped to resolve this dispute efficiently." Opp. at 13. However,
9  the Court should not "assume that the issuing court is in a superior position to resolve subpoena-
10 related motions." In re UBS Fin. Servs., Inc. of Puerto Rico Sec. Litig., 113 F. Supp. 3d at 287
11 (internal quotation marks and citation omitted). Natera does not identify any other circumstances
12 that would warrant transfer to the District of Delaware. On the other hand, transferring the Motion
13 to Quash would require Eurofins to expend additional resources to re-brief the matter before the
14 Delaware District Court and have its San Francisco-based counsel enter an appearance in the
15 Delaware action. Reply at 8.

16     Ultimately, it is within the Court's discretion whether to transfer the Motion to Quash. See
17 Fed. R. Civ. P. 45(f). Given that Eurofins, the subpoenaed party, does not consent to transfer, the
18 Motion to Quash has already been fully briefed, and having reviewed the arguments, the Court
19 does not find that exceptional circumstances are present here, and the request to transfer is denied.

20     **2.    Timeliness of Subpoena**

21     Eurofins argues that the Subpoena failed to give it a reasonable time to comply and must
22 therefore be quashed under Rule 45(d)(3)(A)(i). Mot. at 4-6. The Subpoena was served on April
23 3, 2023, and required Eurofins to produce documents, and present a witness to testify at a
24 deposition, by April 14, 2023—which was only eleven calendar days (or nine business days) after
25 service of the Subpoena. Wang Decl., Ex. 2. According to Eurofins, courts will routinely find
26 that fewer than ten days is not reasonable. Mot. at 5 (quoting Free Stream Media Corp. v.
27 Alphonso Inc., No. 17-CV-02107-RS (KAW), 2017 WL 6209309, at *4 (N.D. Cal. Dec. 8, 2017))
28     The parties dispute whether the Court should consider the timeframe for compliance as

nine business days or eleven calendar days. See Opp. at 8. The difference between the two is immaterial, because the Court finds that under either timeframe, Natera failed to give Eurofins a reasonable time to comply under Rule 45(d)(3)(A)(i).

First, discovery in the case had been ongoing since January 2022, but Natera waited almost fourteen months before serving the Subpoena on Eurofins on April 3, 2023, which was only eleven days before fact discovery was set to close on April 14, 2023. Mot. at 2. Natera claims that the reason for the delay in issuing the Subpoena was not a lack of diligence on its part, but because CareDx initially took the position that Natera was its only competitor in the dd-cfDNA diagnostic testing space. Opp. at 9. CareDx's "about-face" occurred on February 17, 2023. Id. According to Natera, it was only then that it began to seek information about Eurofins' market share to prove damages against CareDx based on a "lost profits" theory. Id. at 5, 9. When it proved unable to secure the information independently, Natera was thus forced to issue the Subpoena to Eurofins before the close of fact discovery. Id. at 9.

Yet as Eurofins points out, Natera and Eurofins were co-defendants in a consolidated lawsuit brought by CareDx in 2019 also in the District of Delaware, and also involving the same dd-cfDNA tests to detect organ transplant rejection. Reply at 6; see, e.g., CareDx, Inc. v. Natera, Inc., 563 F. Supp. 3d 329, 336 (D. Del. 2021), aff'd, 40 F.4th 1371 (Fed. Cir. 2022). Therefore, Natera knew about Eurofins as a competitor in the market, regardless of what position was being taken by CareDx on this subject in the Delaware litigation. Given the stage of the litigation and CareDx and Natera's retention of experts, as indicated at the hearing, Natera was in a position by February 17, 2023 to have already begun work on building its damages case, and it was Natera's responsibility to diligently pursue and gather all discovery it could possibly need to prove its damages case against CareDx.

Moreover, the unreasonableness of Natera's last-minute Subpoena before the close of fact discovery is compounded by the broad categories of information requested. See Wang Decl., Ex. 2 (requesting "customer-by-customer, product-by-product level, monthly unit sales and revenues" and "[a]ll documents relating to Your market share" for the tests at issue). Eurofins provides a declaration from its President, Michelle Altrich, who states that it would be unduly burdensome

6

for Eurofins to "search for, review, and produce the requested documents, and to provide a witness on the requested topics," given that Eurofins does not maintain reports with this information in the regular course of business, and it would have to manually search for and compile the financial data. See Declaration of Michelle Altrich in Support of Eurofins' Motion to Quash (Altrich Decl.) ¶¶ 9-10. Therefore, eleven days was not a reasonable amount of time to give Eurofins to provide detailed customer, sales, and revenue data, *and* to prepare a corporate witness to testify on the data. See Free Stream Media Corp., 2017 WL 6209309, at *4 (granting motion to quash where subpoenaed party had nine days to comply, which was not reasonable given the request to "produce both documents and deposition testimony on such an expansive scope of topics in so short a period of time.")

Finally, Natera argues that it has "minimized the burden of its ask" by removing the request for revenue or customer information, and now only seeks information about volume. Opp. at 4-6. Natera has also conveyed to Eurofins that it would be willing to forego a deposition if Eurofins would stipulate to the authenticity of the documents produced. Id. However, the record shows that the parties did not discuss narrowing the scope of the Subpoena's RFPs or foregoing a deposition in exchange for a declaration of authenticity until April 11, 2023, which was only three days before the compliance date. See Nardinelli Decl., Ex. 3. Natera does not offer an explanation as to why it waited eight days before attempting to meet and confer to address Eurofins' concerns with complying with the Subpoena. This last-minute effort to secure some of the sought-after information by narrowing the subpoena request underscores that Natera failed to give reasonable time to Eurofins to respond.

Given the above, the Court finds that the Subpoena failed to provide Eurofins a reasonable time to comply under Rule 45(d)(3)(A)(i) and must therefore be quashed.

### 3. Relevance, Burden, and Substantial Need

"Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena. Specifically, under Rule 45(c)(3)(A), an evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information

to the serving party." Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005) (internal quotation marks and citation omitted).

Here, Eurofins' President submitted a declaration describing the nature of the burden on Eurofins employees should it be required to respond to the Subpoena. See Altrich Decl. ¶ 9 (describing how it would require an estimated "24 business hours from multiple team members in the Eurofins Viracor finance team" to review and compile the information requested from Eurofins' financial systems). On the other hand, Natera argues that the unit sales information it seeks is relevant because its damages expert(s) need to know Eurofins' market share for TRAC to accurately determine Natera's lost profits damages against CareDx using a "market share" theory. Opp. at 5-6; see Ericsson, Inc. v. Harris Corp., 352 F.3d 1369, 1377 (Fed. Cir. 2003) ("To recover lost profits, a patent owner must prove a causal relation between the infringement and its loss of profits. More specifically, the patentee must show a reasonable probability that 'but for' the infringing activity, the patentee would have made the infringer's sales. To show 'but for' causation, the patentee must reconstruct the market to determine what profits the patentee would have made had the market developed absent the infringing product.") (internal quotation marks and citation omitted).

Although Natera's has asserted the need for information on Eurofins' TRAC test to "reconstruct the market" under controlling patent law (Ericsson, 352 F.3d at 1377), Natera offers no evidence that describes the specific information its expert(s) need to calculate lost profits damages and how this aligns with the information requested in the subpoena it served on Eurofins. In Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318 (Fed. Cir. 1990), the plaintiff and patent owner sought to obtain information from nonparty competitors that was purportedly relevant and necessary to the issue of damages in the underlying patent infringement suit. Id. at 1319-20. The subpoenas sought disclosure of each nonparty's confidential business information, such as sales volume of particular products and customer lists. Id. at 1320. The Federal Circuit held that the district court erred in allowing the discovery sought, where the plaintiff's "assertion of a claim for damages or even lost profit damages in itself does not provide a mantle of relevancy with respect to all of the information it sought" and it presented "no more…than a theoretical argument that the

8

requested information" somehow related to its pending patent case. Id. at 1325.

Accordingly, Natera must supply evidence or an affidavit that indicates that it made a "reasonable inquiry" to determine that the particular information it seeks in its subpoena is necessary to its specific damages theory. See id. at 1324-25; see also Vermeer Mfg. Co. v. Toro Co., No. CIV-19-855-D, 2020 WL 1236312, at *4 (W.D. Okla. Mar. 13, 2020); Bogard Constr., Inc. v. Oil Price Info. Serv., LLC, 604 F.Supp.3d 895, 899 (N.D. Cal. 2022) (requiring an expert declaration to establish a substantial need for third-party data spanning a particular time period). Merely raising the issue of "lost profit damages" is not enough to open the door to discovery of a third-party competitor's business information.

Here, Natera's Subpoena on its face requests information about Eurofins' "customer-by-customer, product-by-product level, monthly unit sales and revenue." Wang Decl., Ex. 2. In its opposition, Natera now claims that it does not need Eurofins' customer or revenue information, only volume. Opp. at 6. Natera offers no evidence as to why it requested all three categories of information in the first place, or if it knew that it did not need customer or revenue information when it first issued the Subpoena, or why the sales volume data is necessary for its specific damages calculations. Ultimately, the record is insufficient to establish the relevance of the Eurofins's data to Natera's specific damages calculations or that Natera has a substantial need for the data requested. See Civ. L.R. 7-5(a) ("Factual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record.") Therefore, the Court grants Eurofins' Motion to Quash based on its burden objections under Rule 45(d)(3)(A)(iv), and Natera's failure to establish relevance or a substantial need.

### 4. Disclosure of Confidential Information

Eurofins also seeks to quash the Subpoena on the grounds that it requires Eurofins to produce "highly confidential sales, market and financial information to its direct competitors, Natera and CareDx." Mot. at 7. In particular, Eurofins is concerned that the operative protective order in the Delaware action does not provide sufficient protection of its financial data. Id. at 8.

The protective order permits third parties like Eurofins to produce information as "Attorney's Eyes Only – Highly Confidential." Nardinelli Decl., Ex. 15. According to Natera,

this means that information so designated cannot be provided to Eurofins' competitors, such as Natera and CareDx. Id.; Opp. at 7. However, the protective order specifically provides that "[a]ny use of Protected Material at trial shall be governed by a separate agreement or order." Nardinelli Decl., Ex. 15. Natera indicates that "the parties will work with Eurofins to take protective measures such as requiring the courtroom to be cleared during the presentation of Eurofins' confidential information, anonymizing the presentation of Eurofins data, or other appropriate measures." Opp. at 7-8. This is of course all hypothetical, given that such protective measures will need to be agreed upon by CareDx as well as the Delaware court. If forced to produce the information requested by the Subpoena, Eurofins will have no control over whether that information is or is not ultimately publicly disclosed. See Micro Motion, 894 F.2d at 1325 ("It would be divorced from reality to believe that either party here would serve as the champion of its competitor [] either to maintain the confidentiality designation or to limit public disclosure as much as possible during trial. [The non-party competitor] would, in fact, lose all control of the situation since disclosure of its information depends on the action by a court before whom it has no standing.")

Accordingly, the Court also grants Eurofins' Motion to Quash based on its objection with respect to the Subpoena's requirement that Eurofins disclose its confidential information. See Fed. R. Civ. P. 45(d)(3)(A)(iii).

### B. Administrative Motion to Seal

Natera filed under seal portions of its Opposition that disclosed testimony designated as Confidential or Highly Confidential—Attorney's Eyes Only by CareDx under the parties' operative protective order in the Delaware action. ECF No. 6. Natera also filed under seal Exhibits 11, 12, and 16 to the Nardinelli Declaration. Id. Exhibits 11 and 12 are deposition transcripts that disclose testimony designated as Confidential or Highly Confidential—Attorney's Eyes Only by CareDx. Id. Exhibit 16 is CareDx's Responses and Objections to Natera's Fifth Set of Interrogatories, which was also designated as Confidential or Highly Confidential—Attorney's Eyes Only. Id.

Under Local Rule 79-5, CareDx as the designating party was required to file a "statement

and/or declaration" in support of sealing the materials filed by Natera within seven days.  L.R. 79-5(f)(3).  In particular, CareDx needed to comply with Local Rule 79-5(c)(1), which requires "a specific statement of the applicable legal standard and the reasons for keeping a document under seal, including an explanation of: (i) the legitimate private or public interests that warrant sealing; (ii) the injury that will result if sealing is denied; and (iii) why a less restrictive alternative to sealing is not sufficient."  "A failure to file a statement or declaration may result in the unsealing of the provisionally sealed document without further notice to the Designating Party."  L.R. 79-5(f)(3).

Here, CareDx has not appeared before this Court and did not file a statement as required by Local Rule 79-5(f)(3).  Therefore, the only justification presented for sealing the material is that the documents were designated as Confidential or Highly Confidential—Attorney's Eyes Only under the parties' protective order.  However, "a blanket protective order that allows the parties to designate confidential documents does not provide sufficient judicial scrutiny to determine whether each particular document should remain sealed."  Jones v. PGA Tour, Inc., No. 22-CV-04486-BLF, 2023 WL 2232094, at *1 (N.D. Cal. Feb. 23, 2023).

The Court will provide CareDx with another opportunity to file the statement/declaration required under Local Rule 79-5(f)(3) in connection with Natera's Administrative Motion to Seal.  CareDx must file the required statement/declaration no later than 21 days after the date of this Order.  A failure to file the statement/declaration by this deadline will result in the Court's denial of Natera's Administrative Motion to Seal without further notice to the parties.

**IV.   CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Eurofins' Motion to Quash the Subpoena based on Rule 45(d)(3)(A)(i), (iii), (iv).[2]  Natera is hereby ordered to serve a copy of this Order on CareDx by June 8, 2023.  By June 22, 2023, CareDx must file a statement/declaration in support

---

[2] Because the Court is granting Eurofins' Motion to Quash based on three of the four enumerated reasons for quashing a Subpoena under Rule 45(d)(3)(A), the Court need not address Eurofins' fourth objection based on Rule 45(d)(3)(A)(ii) ("On timely motion, the court for the district where compliance is required must quash or modify a subpoena that…requires a person to comply beyond the geographical limits specified in Rule 45(c).")

11

of Natera's Administrative Motion to Seal, as required by Local Rule 79-5(f)(3).

**IT IS SO ORDERED.**

Dated: 5/31/2023

_____
LISA J. CISNEROS
United States Magistrate Judge